*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

LISA YERKOVICH,

      Plaintiff-Appellant,

v

HENRY FORD HOSPITAL CORPORATION,
doing business as HENRY FORD MACOMB
HOSPITAL, and TIM ANDERSON, R.N.,

      Defendants-Appellees.

UNPUBLISHED
August 22, 2024

No. 367589
Macomb Circuit Court
LC No. 2023-000481-NO

Before: MURRAY, P.J., and BORRELLO and MARIANI, JJ.

PER CURIAM.

Plaintiff appeals as of right an order granting defendants' motion for summary disposition
in this action arising out of an alleged assault and battery that occurred in a hospital. We affirm.

On February 8, 2023, plaintiff filed a complaint alleging defendant Tim Anderson, a
registered nurse employed by defendant Hospital (defendant), "physically managed her to the floor
and broke her necklace" after she refused to submit to a skin check following her admittance to
Henry Ford Macomb Hospital for a suicide attempt. She further alleged that an investigation into
the incident at the hospital concluded she "was not an imminent risk of serious or nonserious
physical harm to [herself], staff, or others" and that Anderson applied unreasonable and excessive
force which caused her to suffer significant injuries and damages. Plaintiff claimed negligence,
gross negligence, and wanton and willful misconduct by defendant for improper training and
negligent hiring of Anderson, and assault and battery against Anderson.

An investigation summary report was attached to the complaint. This report noted plaintiff
filed a complaint that, if substantiated, would constitute a violation of plaintiff's rights under MCL
330.1722 of the Michigan Mental Health Code, MCL 330.1001 *et seq*. It also concluded that there
was a preponderance of evidence to support that Anderson had used unreasonable force on
plaintiff, and that plaintiff did not pose an imminent risk of harm to anyone.

Defendants, in lieu of filing an answer, filed a motion for summary disposition under MCR
2.116(C)(8) and (C)(10). Defendants noted that, according to medical records, plaintiff was

admitted to the hospital after walking into traffic. The medical records stated that plaintiff refused to remove her necklace, refused to comply with a skin check, was agitated, and yelled at staff. Hospital staff reported plaintiff kicked female staff members, attempted to bite staff, and refused oral Ativan three times before she was physically held down for two minutes. During these two minutes, plaintiff was given a dose of Ativan and her necklace was removed.

According to defendants, plaintiff's claims sounded in medical malpractice rather than ordinary negligence, because the claims arose during the course of a professional relationship and raised a question of medical judgment. Specifically, defendants asserted that the force applied by Anderson must be assessed through expert testimony because a lay person would be unable to determine what constitutes unreasonable force when managing a combative patient who was admitted to the inpatient psychiatric unit.

Attached to defendants' summary disposition motion was a significant event report filed by a nurse employed by defendant, which stated that plaintiff refused to remove her necklace and cooperate with nurses for a skin assessment. The report noted that plaintiff refused treatment, was agitated, kicked staff members, attempted to bite staff members, and refused direction. These events led to plaintiff being restrained by Anderson for approximately two minutes. A second report by the doctor in charge of plaintiff's case noted that plaintiff was belligerent and aggressive towards staff members. Defendants attached to their reply the Michigan Department of Health and Human Services (DHHS) policy on restraint and seclusion, which enumerated a number of situations that allow a nurse to restrain or hold a patient. Among these situations are when a patient is kicking a person, is acting in a violent or destructive manner, or is refusing treatment that could, as a result, lead to an emergency situation.

Plaintiff argued Anderson's actions sounded in ordinary negligence as any lay juror would be able to make the determination that unreasonable and excessive force was used against her. Plaintiff also asserted that granting summary disposition under MCR 2.116(C)(10) would be premature as further discovery would support her claim, particularly because defendants had not yet produced surveillance video footage of the incident that she contended would show she was not posing a risk of harm to anyone.

The trial court issued a written opinion and order granting defendants' motion for summary disposition under MCR 2.116(C)(10). The trial court stated plaintiff had not substantiated her claim that outstanding discovery, namely video of the incident, was germane to a proper legal characterization of the matter. The trial court noted there was no dispute that plaintiff's interaction with Anderson was through a professional relationship, satisfying the first prong of the test to determine whether the claim was one of medical malpractice. The trial court held that whether proper management of plaintiff occurred, or whether Anderson properly implemented a physical hold or restraint of plaintiff to treat her, was a question of medical judgment that would require special medical knowledge not within the realm of an average juror. Therefore, the trial court concluded plaintiff's complaint sounded in medical malpractice, and dismissed plaintiff's complaint under MCR 2.116(C)(10).

The trial court granted summary disposition under MCR 2.116(C)(10), but "[i]n determining whether the nature of a claim is ordinary negligence or medical malpractice . . . a court does so under MCR 2.116(C)(7)." *Bryant v Oakpointe Villa Nursing Ctr, Inc*, 471 Mich 411,

419; 684 NW2d 864 (2004). This Court reviews summary disposition rulings de novo. *Henry Ford Health Sys v Everest Nat'l Ins Co*, 326 Mich App 398, 402; 927 NW2d 717 (2018). Under MCR 2.116(C)(7), this Court considers all documentary evidence submitted by the parties, accepting as true the contents of the complaint unless other appropriate documents specifically contradict it. *Bryant*, 471 Mich at 419. "Whether a claim sounds in ordinary negligence or medical malpractice is a question of law that is reviewed de novo." *Trowell v Providence Hosp & Med Ctrs, Inc*, 502 Mich 509, 517; 918 NW2d 645 (2018).

There are two fundamental questions that must be answered in determining whether a claim sounds in ordinary negligence or medical malpractice: "(1) whether the claim pertains to an action that occurred within the course of a professional relationship; and (2) whether the claim raises questions of medical judgment beyond the realm of common knowledge and experience." *Bryant*, 471 Mich at 422. "If both these questions are answered in the affirmative, the action is subject to the procedural and substantive requirements that govern medical malpractice actions." *Id*.

> A professional relationship sufficient to support a claim of medical malpractice exists in those cases in which a licensed health care professional, licensed health care facility, or the agents or employees of a licensed health care facility, were subject to a contractual duty that required that professional, that facility, or the agent or employees of that facility, to render professional health care services to the plaintiff. [*Id*. at 422-423.]

Plaintiff does not dispute that her claims arose out of a professional relationship, nor could she. Plaintiff arrived at the hospital to receive mental health care, and Anderson was a registered nurse employed by the hospital to provide such care.

Turning to the second question, "[i]f the reasonableness of the health care professional's action can be evaluated by lay jurors, on the basis of their common knowledge and experience, it is ordinary negligence." *Id*. at 423. If a health care professional's actions can only be evaluated by a jury after having been presented with the standards of care pertaining to the medical issue by an expert, the claim is one of medical malpractice. *Id*. Whether the facts raise issues that are within a lay juror's common knowledge and experience determines the type of claim presented. *Id*. at 423-424. "The ordinary layman does not know the type of supervision or monitoring that is required for psychiatric patients in a psychiatric ward." *Dorris v Detroit Osteopathic Hosp Corp*, 460 Mich 26, 47; 594 NW2d 455 (1999).

We hold that plaintiff's claims sound in medical malpractice because they raise questions of medical judgment beyond common knowledge. It is undisputed that Anderson physically restrained plaintiff. But his decision to do so was a question of his medical judgment because plaintiff was at the hospital being treated for mental illness after attempting suicide. Lay jurors would not be familiar with the Mental Health Code or the DHHS restraint and seclusion policy. Nor would they have the common knowledge or experience to know how psychiatric patients should be treated, regardless of whether they actually were being aggressive. And further discovery would not alter our conclusion. In *Dorris*, 460 Mich at 46, our Supreme Court cited with approval this Court's decision in *Waati v Marquette Gen Hosp*, 122 Mich App 44, 49; 329 NW2d 526 (1982), holding that "[w]hether a seizure patient requires constant medical attendance or restraints is an issue of medical management to be established by expert testimony." Plaintiff

relies on an unpublished opinion that is neither binding nor applicable.  Plaintiff also argues the trial court should not have ruled until defendants produced surveillance video footage of the incident, which would corroborate her version of the events.  But the record already reflects that version of events, and further proofs of its truth are not necessary to determine whether plaintiff's claim in this case sounds in ordinary negligence or medical malpractice.  The trial court did not err in granting summary disposition to defendants.

Affirmed.

/s/ Christopher M. Murray
/s/ Stephen L. Borrello
/s/ Philip P. Mariani